DAVID R. SINGH (Bar No. 300840)
david.singh@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway, 4th Floor
Redwood Shores, CA 94065-1134
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

Attorneys for Defendant CBS Interactive Inc.

(*Additional Attorneys Listed on Signature Page*)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

AUSTIN WHITE, on behalf of himself and all similarly situated persons,

Plaintiff,

v.

CBS INTERACTIVE INC., a Delaware corporation,

Defendant.

Case No. 3:26-cv-03064-RFL

**DEFENDANT CBS INTERACTIVE INC.'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT, OR IN THE ALTERNATIVE, FOR A STAY OF PROCEEDINGS**

Date: July 28, 2026
Time: 10:00 a.m.
Courtroom: 15–18th Floor
Judge: Honorable Rita F. Lin

# NOTICE

**TO THE COURT AND ALL PARTIES OF RECORD:**

**PLEASE TAKE NOTICE** that on July 28, 2026 at 10:00 a.m. or as soon thereafter as the matter may be heard, before the Honorable Rita F. Lin at the Phillip Burton Federal Building, 450 Golden Gate Avenue, San Francisco, CA 94102 in Courtroom 15–18th floor, CBS Interactive Inc. ("**Defendant**" or "**CBSi**") will and hereby does move to dismiss the Complaint filed by Austin White ("**Plaintiff**"), on behalf of himself and all those similarly situated, or in the alternative, for a stay of proceedings. Defendant's motion to dismiss is brought pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Defendant's motion is based on this notice of motion and motion, the supporting memorandum of points and authorities, and all other pleadings and papers filed herein, and such argument and evidence as may be presented to the Court.

Dated: June 15, 2026

Respectfully submitted,

WEIL, GOTSHAL & MANGES LLP

By: *__/s/ David R. Singh__*

David R. Singh

## TABLE OF CONTENTS


Page

I. PRELIMINARY STATEMENT ....... 1

II. BACKGROUND ....... 1

A. PLAINTIFF'S ALLEGED INTERACTIONS WITH THE WEBSITE ....... 1

B. PLAINTIFF'S ALLEGATIONS REGARDING THIRD-PARTY TRACKING TECHNOLOGIES ....... 2

III. LEGAL STANDARD ....... 3

IV. ARGUMENT ....... 3

A. PLAINTIFF CANNOT ESTABLISH ARTICLE III STANDING ....... 3

B. ALTERNATIVELY, THE COURT SHOULD STAY PROCEEDINGS ....... 7

C. PLAINTIFF FAILS TO ALLEGE A CLAIM UNDER CIPA § 631 ....... 8

1. CBSi Is Exempt From Liability Under the Party Exception to CIPA § 631 ....... 8

2. The Allegedly Intercepted Communications Were Contentless ....... 8

D. PLAINTIFF FAILS TO STATE A CLAIM UNDER THE ECPA ....... 9

1. The Party Exception Exempts CBSi From Any Liability Under the ECPA ....... 9

2. The Crime-Tort Exception Does Not Apply ....... 10

3. The Allegedly Intercepted "Communications" Were Contentless ....... 11

E. PLAINTIFF FAILS TO PLAUSIBLY ALLEGE FACTS NEEDED FOR A CLAIM UNDER THE UCL ....... 11

F. PLAINTIFF FAILS TO PLAUSIBLY ALLEGE FACTS NEEDED FOR AN UNJUST ENRICHMENT CLAIM ....... 12

G. THE CONSTITUTIONAL INVASION OF PRIVACY AND INTRUSION UPON SECLUSION CLAIMS FAIL ....... 13

V. CONCLUSION ....... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Apple Processor Litig.*,
2022 WL 2064975 (N.D. Cal. 2022) ....................13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................3

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019) ....................12

*Belluomini v. Citigroup*,
2013 WL 3855589 (N.D. Cal. July 24, 2013) ....................15

*Blanco v. County of Kings*,
142 F. Supp. 3d 986 (E.D. Cal. 2015) ....................15

*Castrellon v. Fitness Club Mgmt., LLC*,
2018 WL 5099741 (C.D. Cal. June 6, 2018) ....................7

*Chandra v. Prager Univ. Found.*,
2025 WL 3049870 (C.D. Cal. Oct. 21, 2025) ....................7

*Clausing v. S.F. Unified Sch. Dist.*,
221 Cal. App. 3d 1224 (1990) ....................15

*D'Antonio v. Smith & Wesson Inc.*,
820 F. Supp. 3d 928 (N.D. Cal. 2026) ....................7

*Deivaprakash v. Condé Nast Digital*,
798 F. Supp. 3d 1100 (N.D. Cal. 2025) ....................4

*Diaz v. Paramount Skydance Corp.*,
2026 WL 1090958 (C.D. Cal. Apr. 20, 2026) ....................6

*Doe v. Kaiser Found. Health Plan*,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ....................11

*Drummer v. CoStar Grp., Inc.*,
2026 U.S. App. LEXIS 8141 (9th Cir. Mar. 18, 2026) ....................7

*Drummer v. Costar Grp., Inc.*,
2026 WL 712922 (C.D. Cal. Feb. 13, 2026) ....................7

*In re Facebook, Inc. Internet Tracking Litigation*,
956 F.3d 589 (9th Cir. 2020) ....................8, 13

*Fogelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986, 992 (2011), *as modified* ........ 15

*Gilligan v. Experian Data Corp.*,
2026 WL 32259 (N.D. Cal. Jan. 6, 2026) ........ 4, 9, 13

*In re Google Gmail Litig*.,
2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ........ 11

*In re Google, Inc. Priv. Pol'y Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) ........ 14, 15

*Graham v. Noom, Inc*.,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ........ 8

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ........ 12

*Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*,
61 Cal. 4th 988 (2015) ........ 12

*Hill v. NCAA*,
7 Cal. 4th 1 (1994) ........ 13, 14, 15

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........ 14, 15

*J.S. v. Spring Fertility Holdings, LLC*,
2026 WL 1483490 (N.D. Cal. May 27, 2026) ........ 10

*Jones v. Peloton Interactive, Inc.*,
720 F. Supp. 3d 940 (S.D. Cal. 2024) ........ 9

*Katz-Lacabe v. Oracle Am.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ........ 11, 12

*Karwowski v. Gen Digital, Inc.*
2025 WL 3002610, at *2 (9th Cir. Oct. 27, 2025) ........ 10

*Khamooshi v. Politico LLC* (*Khamooshi I*),
786 F. Supp. 3d 1174 (N.D. Cal. 2025) ........ *passim*

*Khamooshi v. Politico LLC (Khamooshi II*),
2025 WL 2822879 (N.D. Cal. Oct. 2, 2025) ........ *passim*

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) ........ 10

*Lau v. Gen Digital Inc.*,
2023 WL 10553772 (N.D. Cal. 2023) ........ 12

*Licea v. Vitacost.com*,
683 F. Supp. 3d 1118 (S.D. Cal. 2023)....8

*Low v. LinkedIn Corp*.,
2011 WL 5509848 (N.D. Cal. 2011) ....6, 12

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012)....15

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)....6

*Maghoney v. Dotdash Meredith, Inc.*,
2026 WL 497402 (S.D. Cal. Feb. 23, 2026)....5

*McDonald v. Kiloo ApS*,
385 F. Supp. 3d 1022 (N.D. Cal. 2019)....13

*In re Meta Android Privacy Litig.*,
2026 WL 1279416 (N.D. Cal. May 11, 2026).... *passim*

*Mikulsky v. Bloomingdale's*,
713 F. Supp. 3d 833 (S.D. Cal. 2024)....8

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023)....4

*Mitchener v. CuriosityStream, Inc.*,
815 F. Supp. 3d 845 (N.D. Cal. 2025)....4

*Morilha v. Alphabet Inc.*,
2024 WL 5205542 (N.D. Cal. Dec. 23, 2024)....14

*Nat'l Union Fire Ins. Co v. Elec. Arts, Inc*.,
2012 WL 219428 (N.D.Cal. Jan. 24, 2012)....8

*Pena v. GameStop, Inc*.,
670 F. Supp. 3d 1112 (S.D. Cal. 2023)....10

*Planned Parenthood Fed'n of Am. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) ....11

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .... *passim*

*Pruchnicki v. Envision Healthcare Corp*.,
845 Fed. Appx. 613 (9th Cir. 2021)....6

*Ramos v. Gap, Inc*.,
2025 WL 2144837 (N.D. Cal. Jul. 29, 2025)....9, 11

*Rodriguez v. Brushfire Recs.*,
2025 WL 3692144 (C.D. Cal. Dec. 15, 2025) ....................4, 5

*Rogers v. Ulrich*,
52 Cal. App. 3d 894 (1975) ....................8

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) ....................14

*Selby v. Sovrn Holdings, Inc.*,
2025 WL 2950164 (N.D. Cal. 2025) (Lin, J.)....................9

*Sisti v. Bosley Inc.*,
2026 WL 1223927 (C.D. Cal. Apr. 27, 2026) ....................5

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 2210002 (N.D. Cal. 2025) (Lin, J.)....................9, 10, 11, 12

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) ....................14

*Sonner v. Premium Nutrition Corporation,*
971 F.3d 834, 844 (9th Cir. 2020) ....................13

*Sussman v. ABC*,
186 F.3d 1200 (9th Cir. 1999) ....................11

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) ....................11

*Thomas v. Papa Johns Int'l, Inc.*,
2024 WL 2060140 (S.D. Cal. May 8, 2024)....................15

*Timothee v. Meta Platforms, Inc.*,
2026 WL 1130363 (N.D. Cal. Apr. 27, 2026) ....................5, 6

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)....................3, 4, 6

*Tsering v. Meta Platforms, Inc.*,
2026 WL 89320 (N.D. Cal. Jan. 12, 2026) ....................4, 12, 13

*In re USA Today Co., Inc. Internet Tracking Litig.*,
2026 WL 932655 (N.D. Cal. Apr. 6, 2026) ....................5, 6

*Warth v. Seldin*,
422 U.S. 490 (1975)....................7

*Williams v. What If Holdings, LLC*,
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ....................14

*Zocco v. Nelnet, Inc.*,
2026 WL 242037 (N.D. Cal. 2026) ....................8, 10

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ....................8, 9, 11

**Statutes**

18 U.S.C. § 2510 *et seq.* (“ECPA”) .................... *passim*

Cal. Penal Code § 630 *et seq.* (“CIPA”) .................... *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(1)....................3

Fed. R. Civ. P. 12(b)(6)....................3

## MEMORANDUM OF POINTS AND AUTHORITY

## I. PRELIMINARY STATEMENT

Plaintiff Austin White ("**Plaintiff**") asserts six defective privacy claims against CBS Interactive Inc. ("**Defendant**" or "**CBSi**"), all based on the alleged disclosure of anonymized alphanumeric information showing at most that a particular device visited certain pages on cbsnews.com (the "**Website**"). Plaintiff lacks Article III standing to assert these claims because he cannot show his alleged injuries bear a "close relationship" to a "traditionally recognized" harm and he does not adequately plead disclosure of his own personally identifying and highly offensive information. Even if the Court finds that Plaintiff has Article III standing, it should stay the proceedings pending resolution of the Ninth Circuit's recent grant of interlocutory review of the denial of a motion to dismiss concerning the same Article III standing issue raised here and similar allegations of third-party tracking.

Plaintiff also fails to state a claim under the statutes under which he sues. His California Invasion of Privacy Act ("**CIPA**") claim fails because CBSi cannot eavesdrop on its own communications, and Plaintiff has not plausibly alleged interception of the contents of communications. His Electronic Communications Privacy Act ("**ECPA**") claim similarly fails because CBSi is a party to the alleged communications, and Plaintiff has not plausibly alleged interception of the contents of communications. And under Ninth Circuit law, ECPA's crime-tort exception does not apply. His California Unfair Competition Law ("**UCL**") claim likewise fails given his failure to plausibly allege an economic injury.

Plaintiff has similarly failed to state any common law claim. He cannot state an unjust enrichment claim due to his failure to adequately plead an economic injury, and because he fails to assert he lacks an adequate remedy at law. Lastly, Plaintiff's claims for invasion of privacy under the California Constitution and intrusion upon seclusion fail because he cannot plausibly allege the infringement of a protected privacy interest based on disclosure of information that at most reflected a particular device visited the Website.

## II. BACKGROUND

### A. Plaintiff's Alleged Interactions with the Website

Defendant CBSi is a Delaware corporation and a "digital media company that owns, operates, and controls" the Website, which Plaintiff describes as "an online news and entertainment platform[.]"

Compl. ¶¶ 1, 15. Per Plaintiff, the Website "provides users with access to news articles, investigative reports, video content, and live streaming services" and "functions as the primary consumer-facing platform through which California users access CBS's journalism and news services." *Id.* ¶ 18.

Plaintiff pleads he visited the Website on "multiple occasions[,]" but identifies only two specific webpages he navigated to: https://www.cbsnews.com/news/mental-health-distress-lgbtq-youth-study/ and https://www.cbsnews.com/news/trump-administration-lgbtq-rights-divide-conquer-approach/. *Id.* ¶¶ 2, 14. Plaintiff does not identify any other URLs he visited or search terms he entered, describe any content he viewed beyond those two pages, or allege that he provided any name, email address, account credentials, or other personally identifying information to the Website.

**B. Plaintiff's Allegations Regarding Third-Party Tracking Technologies**

Plaintiff alleges CBSi installs certain "third-party tracking technologies on the Website that intercept the contents of users' electronic communications." Compl. ¶ 4. Specifically, Plaintiff identifies two third-party technologies allegedly embedded on the Website: the "DoubleClick Tracker" and the "Trade Desk Tracker" (the "**Trackers**"). *Id.* ¶¶ 8–10. He alleges the Trackers "execute automatically within users' browsers upon page load and navigation[.]" *Id.* ¶¶ 10–11. Although Plaintiff alleges generally—in a conclusory fashion—that the Trackers transmit "page URLs identifying what he was browsing, search terms, page titles and content categories associated with those URLs, and/or the referrer URLs reflecting prior navigation," *id.* ¶ 3, the Complaint's specific factual allegations are more limited.

***DoubleClick.*** Plaintiff alleges CBSi "embedded and deployed Google's DoubleClick tracking infrastructure on the Website," which he describes as "a behavioral analytics and advertising platform[.]" *Id*. ¶ 35. Plaintiff alleges Google received the URLs for the webpages he visited, and certain "cookie parameters carrying persistent visitor identifiers." *Id*. ¶ 37. The screenshots in the Complaint which purport to depict a transmission to Google from an unspecified Website visitor's browser reveal that these identifiers amount to unintelligible alphanumeric strings. *Id.* ¶¶ 36-37, Figs. 1–2. They do not contain information identifying Plaintiff by name, email address, or other direct personal identifier. *Id.* Moreover, the URLs identified in the screenshots do not contain search terms or personal identifiers, and instead are merely URLs associated with certain articles on the Website. *Id.* Plaintiff claims that Google returned a response to this transmission from the visitor's browser, confirming Google used the data to

"build behavioral profiles and enable interest-based advertising and audience targeting." *Id.* ¶ 39.

***The Trade Desk.*** Plaintiff describes The Trade Desk as a "real-time bidding infrastructure" CBSi employs "on the Website" for advertising purposes. *Id.* ¶ 42. The Complaint includes two additional screenshots—Figures 3 and 4—that Plaintiff asserts depict a transmission from an unspecified Website visitor's browser to The Trade Desk with the "URL of the article being viewed" and a "site.keywords" field containing the terms "Politics," "LGBTQ+," and "Trump Administration." *Id.* ¶ 44. Plaintiff alleges the transmission also included "a persistent cross-publisher identifier (a pubcid.org Extended ID)," and that The Trade Desk "assigned and set a Trade Desk Identifier (TDID) in Plaintiff's browser[.]" *Id.* ¶¶ 44–45. Like the DoubleClick screenshots, The Trade Desk screenshots do not contain information identifying Plaintiff by name, email address, or other direct personal identifier. *See id.* Figs. 3–4. And as with the DoubleClick screenshots, the URLs identified for The Trade Desk do not contain search terms or personal identifiers, and instead are merely URLs associated with certain articles on the Website.

## III. LEGAL STANDARD

Under Rule 12(b)(1), for a federal court to have subject-matter jurisdiction, a plaintiff must show they have Article III standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430-31 (2021). To establish Article III standing, a plaintiff must demonstrate that they suffered "an injury in fact that is concrete, particularized, and actual or imminent[.]" *Id.* at 423. "As the party invoking federal jurisdiction, the plaintiff bears the burden of demonstrating that [they have] standing." *Popa v. Microsoft Corp.*, 153 F.4th 784, 788 (9th Cir. 2025) (citation modified) (citing *Transunion*, 594 U.S. at 430–31).

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must disregard conclusory allegations, which are not entitled to the assumption of truth, and determine whether the remaining "well-pleaded factual allegations" suggest that the plaintiff has a plausible—as opposed to merely conceivable—claim for relief. *Id.* at 679.

## IV. ARGUMENT

### A. Plaintiff Cannot Establish Article III Standing

Courts assess Article III standing through the specific privacy torts recognized at common law, assessing whether the plaintiff has pled "harm traditionally recognized as providing a basis for a lawsuit

in American Courts." *TransUnion*, 594 U.S. at 427. While this Court has issued certain decisions recognizing Article III standing in internet privacy claims, these cases have involved distinct allegations, including that defendants compiled cross-internet profiles tied to specific individuals. For example, in *Gilligan v. Experian Data Corp.*, 2026 WL 32259 (N.D. Cal. Jan. 6, 2026), the Court found the plaintiffs had standing where Experian engaged in "unauthorized widespread tracking and data collection," compiled "detailed profiles" of each plaintiff's web-browsing activity tied to email addresses and other personal identifiers, and sold those profiles commercially. *Id.* at *2. The Court distinguished *Popa*, which involved non-sensitive interactions with a single website. *Id.*[1]

Here, Plaintiff lacks standing because he has not "adequately allege[d] harm from the statutory violations . . . analogous" to privacy harms actionable at common law—namely "intrusion upon seclusion" and public disclosure of private facts. *Rodriguez v. Brushfire Recs.*, 2025 WL 3692144, at *6 (C.D. Cal. Dec. 15, 2025). These traditionally recognized privacy harms require collection or disclosure of *personally identifying* information that is "*highly offensive* to a reasonable person." *Popa*, 153 F. 4th at 791 (emphasis in original). Plaintiff alleges an "invasion of privacy" from CBSi's alleged use of advertising trackers on a publicly accessible news website, Compl. ¶¶ 4, 8, 80–87, but such an allegation, "pitched at a high level of generality," cannot qualify. *Popa*, 153 F.4th at 792.

**1. Plaintiff Has Not Pled Disclosure of Personally Identifying Information**

As to the requirement to allege disclosure of personally identifying information, Plaintiff fails to "identify [what] specific information [was] allegedly disclosed." *Khamooshi v. Politico LLC (Khamooshi II*), 2025 WL 2822879, *3 (N.D. Cal. Oct. 2, 2025); *Mitchener v. CuriosityStream, Inc.*, 815 F. Supp. 3d 845, 850 (N.D. Cal. 2025) (rejecting "conclusory" assertions regarding disclosure of "personally identif[ying]" data); *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) (similar). Rather, Plaintiff alleges he visited the Website, and navigated to public webpages, and certain third parties received URLs, search terms, page titles, cookie values, and content and interest categories

[1] This Court's other decisions evaluated similarly distinct allegations. In *Deivaprakash v. Condé Nast Digital*, 798 F. Supp. 3d 1100, 1104, 1106-07 (N.D. Cal. 2025), plaintiff alleged tracking *beyond* defendant's websites, and allowed third parties to compile comprehensive profiles reflecting geographic locations, incomes, and preferences. In *Tsering v. Meta Platforms, Inc.*, 2026 WL 89320, at *1–3 (N.D. Cal. Jan. 12, 2026), plaintiffs pled Meta collected data that allowed it to infer where a user lives, works, and receives medical treatment. *In re Meta Android Privacy Litig.*, 2026 WL 1279416, at *1–3 (N.D. Cal. May 11, 2026) targeted Meta's use of its own pixel to identify Android users.

such as "Politics," "LGBTQ+," and "Trump Administration." Compl. ¶¶ 1–2, 3, 8–10, 14, 35, 42–43, 45–46. These allegations fail because they do not establish "any of [Plaintiff's] searches were directly linked to his name or other personally identifiable information[,]" *Maghoney v. Dotdash Meredith, Inc.*, 2026 WL 497402, *5 (S.D. Cal. Feb. 23, 2026), and many courts in this District have dismissed nearly identical allegations. *Khamooshi v. Politico LLC* (*Khamooshi I*), 786 F. Supp. 3d 1174, 1179 (N.D. Cal. 2025) (involving "browser and device data, IP address, and 'other identifying information'"); *In re USA Today Co., Inc. Internet Tracking Litig.*, 2026 WL 932655, *2 (N.D. Cal. Apr. 6, 2026) ("[T]here is no legally protected privacy interest in information such as device type and browser type"); *Rodriguez*, 2025 WL 3692144, *7 ("the [complaint] is filled with vague and generalized allegations of the type of data that the [relevant] tracking pixel is capable of collecting from website visitors").[2] The Court should dismiss Plaintiff's claims on this basis here as well.

**2. Plaintiff Has Not Identified a Highly Offensive Collection or Disclosure**

Moreover, absent from Plaintiff's allegations is any specific "embarrassing, invasive, or otherwise private information[.]" *Khamooshi II*, 2025 WL 2822879, *3; *Maghoney*, 2026 WL 497402, *5. There is nothing "sensitive" or "private" about accessing categories of content, without revealing personal information, on a commonly visited news platform. Compl. ¶ 16; *Timothee v. Meta Platforms, Inc.*, 2026 WL 1130363, at *5 (N.D. Cal. Apr. 27, 2026) (disclosure of website user's access to food-resource information on public website insufficient to confer standing, notwithstanding plaintiffs alleged the disclosure reflected financial hardship and resulted in targeted ads); *Sisti v. Bosley Inc.*, 2026 WL 1223927, at *3–4 (C.D. Cal. Apr. 27, 2026) (information reflecting individuals scheduled hair-transplant consultations not sufficiently sensitive). In *Popa v. Microsoft Corporation*, the Ninth Circuit held alleged disclosures of "30 different categories" of information about individuals' activity on a pet supplies website to Microsoft's third-party session replay software did not suffice, because the information was not "remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law." 153 F.4th at 786, 791. Here, Plaintiff alleges, like in *Popa*, that he engaged with a public website. He does not allege CBSi is a data broker, compiled or sold a detailed profile on him, or tracked

[2] Nor do Plaintiff's references to "persistent visitor identifiers," "cross-session identifiers," and other identifiers cure this defect. Compl. ¶¶ 35, 38, 42, 45. Plaintiff never pleads how those identifiers allowed Google, The Trade Desk, or any other party to identify Plaintiff by name. *See generally id.* ¶¶ 1–94.

him across the internet. *See generally* Compl. ¶¶ 1–94. Plaintiff thus pleads the same theory *Popa* rejected, and therefore lacks Article III standing.

Plaintiff's allegation that CBSi facilitated targeted advertising also do not establish a "highly offensive" invasion of "private affairs." Compl. ¶¶ 39, 46; *Dawidzik*, 2025 WL 3786963, *1, *4-5 (disclosure of data about use of public website not sufficiently offensive even though data transmissions were allegedly used "to profile users and facilitate targeted advertising"); *Diaz v. Paramount Skydance Corp.*, 2026 WL 1090958, *1, *7 (C.D. Cal. Apr. 20, 2026) (dismissing claims that streaming service used third-party technologies that facilitated tracking across the internet); *Khamooshi II*, 2025 WL 2822879, *1, *3 (dismissing allegations that trackers collected device and browser type, and device fingerprints "for use in advertising and analytics"). Plaintiff lacks standing for this reason too.

**3. Plaintiff's Remaining Theories of Harm Do Not Establish Standing**

Plaintiff cannot avoid these deficiencies by relying on alleged statutory violations as suggested in the Complaint (Compl. ¶ 28), because "an injury in law is not an injury in fact." *TransUnion*, 594 U.S. at 427; *In re USA Today*, 2026 WL 932655, at *3 (plaintiff must "demonstrate more than just a statutory violation."); *Timothee*, 2026 WL 1130363, at *5 (alleged CIPA violations must be "benchmarked to a specific tort."). Plaintiff's economic theories concerning his data's value, and CBSi's receipt of monetary benefits (Compl. ¶¶ 72–73, 91) also do not suffice, as he fails "to allege facts that demonstrate that he was economically harmed by [CBSi]'s practices…simply because [his] unspecified personal information was purportedly collected by a third party.'" *Low v. LinkedIn Corp.*, 2011 WL 5509848, at *5 (N.D. Cal. 2011); *see also Pruchnicki v. Envision Healthcare Corp.*, 845 Fed. Appx. 613, 614–615 (9th Cir. 2021) (holding "'mere misappropriation of personal information' does not establish compensable damages"). Moreover, Plaintiff's failure to plead a protected privacy interest in the information at issue also undermines his economic harm theory. *In re USA Today*, 2026 WL 932655, at *3 (failure to identify a protected privacy interest undermined economic theory); *Khamooshi I*, 786 F. Supp. 3d at 1183 (same).

**4. Plaintiff Has Not Adequately Pled He Was In Fact Injured**

Plaintiff must also meet the requirement that his injury be particularized, meaning it must affect him "in a personal and individual way." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 n.1 (1992). Plaintiff, here, however, has not pled the screenshots reflect transmissions from his own browser, instead alleging

"on information and belief that the same tracking mechanisms depicted below operated on the Website during Plaintiff's visits." Compl. ¶ 34. Such illustrative screenshots are insufficient to establish that Plaintiff was personally injured, providing another basis for dismissal of his claims. *D'Antonio v. Smith & Wesson Inc.*, 820 F. Supp. 3d 928, 937 (N.D. Cal. 2026) (dismissing allegations that defendant tracked unspecified "[w]ebsite users[,]" because plaintiffs had not "alleged that they ever communicated with the website"); *Chandra v. Prager Univ. Found.,* 2025 WL 3049870, *4 (C.D. Cal. Oct. 21, 2025) (screenshot not attributed to plaintiffs insufficient to state VPPA claim); *Warth v. Seldin*, 422 U.S. 490, 502 (1975) (Article III standing requires the plaintiffs be injured, "not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.").

For all these reasons, the Complaint should be dismissed for lack of Article III standing.

### B. Alternatively, the Court Should Stay Proceedings

In the alternative to dismissal, CBSi respectfully requests a brief stay of proceedings. The Ninth Circuit recently granted interlocutory review of the denial of a motion to dismiss order and will consider whether alleged "transmission to third parties of IP addresses and similar information"—including cookie identifiers, browser and device information, interest and demographic information, hashed email addresses, and form field data—by a website operator for targeted advertising suffices for Article III standing. *Drummer v. Costar Grp., Inc.*, 2026 WL 712922, at *2 (C.D. Cal. Feb. 13, 2026); *Drummer v. CoStar Grp., Inc.*, 2026 U.S. App. LEXIS 8141 (9th Cir. Mar. 18, 2026). The court's order recognized the need to provide clarity "across the many other cases . . . disagreeing about the same issue." 2026 WL 712922, at *2.

The Ninth Circuit's review in *Drummer* implicates a CIPA privacy claim, similar factual allegations, and the same jurisdictional issue as here. The Ninth Circuit's decision almost certainly will "provide controlling precedent" informing this action, which "may be dispositive." *Castrellon v. Fitness Club Mgmt., LLC*, 2018 WL 5099741, at *7 (C.D. Cal. June 6, 2018). Staying this case until the appeal is resolved will conserve the resources of the parties and the Court, including potentially complex discovery, working with expert witnesses, and litigating both class certification and summary judgment. Nor will a stay impose undue delay. The Ninth Circuit has already established a briefing schedule—set to conclude no later than July 20, 2026—rendering the duration of any stay limited and predictable. In

similar circumstances, courts have regularly concluded that a temporary stay will support "the most efficient and fairest course." *Nat'l Union Fire Ins. Co v. Elec. Arts, Inc.*, 2012 WL 219428, at *1 (N.D. Cal. Jan. 24, 2012). Thus, in the alternative to dismissal, a stay of proceedings is warranted.

**C. Plaintiff fails to Allege a Claim Under CIPA § 631**

**1. CBSi Is Exempt From Liability Under the Party Exception to CIPA § 631**

CIPA § 631 provides an exemption from liability if the alleged wiretapper is a "party" to the communication, as here. Compl. ¶¶ 2, 12, 14 (acknowledging Plaintiff communicated with CBSi in visiting the Website). As California courts have recognized, "'[e]avesdropping' is the problem the Legislature meant to deal with" when it enacted CIPA, but "it is never a secret to one party to a conversation that the other party is listening to the conversation." *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975). It follows, "[a] party to a conversation is not liable under Section 631(a) for recording its own conversation." *Licea v. Vitacost.com*, 683 F. Supp. 3d 1118, 1121-22 (S.D. Cal. 2023) (collecting cases). Nor is a party to a communication liable under § 631 for distributing a communication to which it was a party. *Ulrich*, 52 Cal. App. 3d at 898–99 (affirming judgment dismissing wiretapping claims where a party to a communication, unbeknownst to the other party, recorded and later distributed the conversations); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) ("[S]haring a record is not eavesdropping" for purposes of CIPA § 631). Accordingly, CBSi cannot be held liable for recording its own conversations with Plaintiff or for distributing said communications under § 631.[3]

**2. The Allegedly Intercepted Communications Were Contentless**

CIPA § 631 also requires the "content" of communications to be intercepted. Record information, *i.e.*, "information regarding the characteristics of the message that is generated in the course of the communication" like that at issue here does not qualify. *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106, 1108–09 (9th Cir. 2014); *Mikulsky v. Bloomingdale's*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024) ("[I]nteractions with [a] website" are not contents). Here, Plaintiff's URLs (Compl. ¶ 2) contain parts of

[3] *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020), on which Plaintiff relies to argue the CIPA (and ECPA) party exceptions should not apply, is distinguishable. Compl. ¶ 32. There, the Ninth Circuit ruled Facebook was not a party to communications in the context of "plug-ins on third-party web pages" that tracked Facebook users "after [they] logged out[.]" *Id.* at 596. Here, CBSi operates the Website (Compl. ¶ 14), and Plaintiff understood he was communicating with CBSi when visiting the Website, making it a party to any communications. *E.g.*, *Zocco v. Nelnet, Inc.*, 2026 WL 242037, at *5 (N.D. Cal. 2026).

article titles, and neither contains search terms.[4] Absent "a search term or similar communication made by the user[,]" these URLs fall short of the "contents of the communication." *Zynga*, 750 F.3d at 1109 ("[R]eferer header information that [contained] the user's Facebook ID and the address of the webpage from which the user's HTTP request to view another webpage was sent [did] not meet the definition of 'contents,'"); *Ramos v. Gap, Inc.*, 2025 WL 2144837, at *7 (N.D. Cal. Jul. 29, 2025) (no contents transmitted under § 631 where URLs "functioned like an address to products on Defendant's website").[5]

In addition to the URLs, Plaintiff alleges CBSi "caused the interception of . . . search terms, page titles and content categories associated with those URLs[.]" Compl. ¶ 3. He provides no examples of search terms or page titles allegedly intercepted, rendering such allegations conclusory. *Jones v. Peloton Interactive, Inc.*, 720 F. Supp. 3d 940, 947 (S.D. Cal. 2024) (dismissing § 631 claim where "Plaintiff makes a conclusory assertion that [Defendant] captures the 'full transcript of the conversation' but does not identify enough facts about the content of the allegedly intercepted conversations to enable Defendants to defend itself effectively"). As to content categories, Plaintiff claims The Trade Desk received the terms "Politics," "LGBTQ+," and "Trump Administration[,]" but does not plead that these reflect communications *he* made to the website, such as searches, rendering these allegations insufficient. Compl. ¶ 43; *Ramos*, 2025 WL 2144837, at *7 (emphasizing "communicative information" was not transmitted through URLs allegedly disclosed in finding no contents transmitted). Accordingly, Plaintiff has not plausibly alleged interception of contents, and his § 631 claim should be dismissed.[6]

### D. Plaintiff Fails to State a Claim Under the ECPA

#### 1. The Party Exception Exempts CBSi From Any Liability Under the ECPA

The ECPA provides a right of action against any person who "intentionally intercepts…any…

---

[4] The https://www.cbsnews.com/news/mental-health-distress-lgbtq-youth-study/ URL leads to an article titled "Mental health distress among the nation's LGBTQ+ youth is increasing, study finds[.]" (last visited May 20, 2026). The https://www.cbsnews.com/news/trump-administration-lgbtq-rights-divide-conquer-approach/ URL leads to an article titled "The Trump administration's 'divide and conquer' approach to LGBTQ rights[.]" (last visited May 20, 2026). *See* Compl. ¶ 2.

[5] Cases where this Court found contents have been disclosed are distinct. *In re Meta Android Privacy Litig.*, 2026 WL 1279416, at *2 (N.D. Cal. 2026) (Lin, J.) (involving search terms and information input in form fields); *Smith v. Rack Room Shoes, Inc.*, 2025 WL 2210002, at *1 (N.D. Cal. 2025) (Lin, J.) (involving transmission of search terms); *Selby v. Sovrn Holdings, Inc.*, 2025 WL 2950164, at *3 (N.D. Cal. 2025) (Lin, J.) (involving disclosure of "search queries and specific items Plaintiffs viewed"); *Gilligan v. Experian Data Corp.*, 2026 WL 32259, at *3 (N.D. Cal. 2026) (Lin, J.) (same).

[6] Plaintiff does not plead that CBSi aided and abetted a § 631(a) violation, so his CIPA claim also cannot survive on an aiding and abetting theory. Compl. ¶¶ 55-60.

electronic communication" or any person who discloses or uses the contents of an intercepted electronic communication. 18 U.S.C. § 2511(1)(a), (c), (d). Like CIPA, the ECPA has a party exception, which provides "[i]t shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication[.]" *Id.* § 2511(2)(d). As with CIPA, this exception defeats the ECPA claim because CBSi was a party to Plaintiff's alleged interactions with the Website. *Karwowski v. Gen Digital*, *Inc.*, 2025 WL 3002610, at *2 (9th Cir. Oct. 27, 2025) (party exception protected defendant when plaintiffs alleged they were "users" of the Defendants services); *Zocco*, 2026 WL 242037, at *5 (dismissing ECPA claims on party exception grounds and holding "[Defendant] may be protected by the party exception because Plaintiffs fail to allege that communication of their PII to Defendant – as opposed to Google – was 'unknown.' … The complaint is replete with descriptions of 'Plaintiff[s'] communications with Defendant"); *Pena v. GameStop, Inc*., 670 F. Supp. 3d 1112, 1118 (S.D. Cal. 2023) ("[B]ecause Defendant was the party that was meant to, and did, receive Plaintiff's communications, under the party exception, any alleged interception of the communications is not actionable").

**2. The Crime-Tort Exception Does Not Apply**

A party to a communication can be held liable under the ECPA if it intercepted communications "for the purpose of committing any criminal or tortious act[.]" 18 U.S.C. § 2511(2)(d). But Plaintiff cannot satisfy this crime-tort exception. He at no point alleges CBSi intercepted communications "for the purpose of" committing a crime or tort, pleading CBSi acted for "commercial advertising and analytics purposes" and "monetization purposes." Compl. ¶¶ 12, 80. While this Court found in *Smith* that the crime-tort exception was satisfied in a case involving targeted online advertising, the defendant there allegedly misrepresented that it would not "collect or use" the plaintiffs' personal information. 2025 WL 2210002, at *5. Plaintiff here makes no similar allegation, and there is nothing inherently criminal or tortious about using advertising technologies for commercial purposes, as other courts in this District have held. *J.S. v. Spring Fertility Holdings, LLC*, 2026 WL 1483490, at *3 (N.D. Cal. May 27, 2026) ("[T]he Court agrees with multiple others in this district that have found the crime-tort exception is inapplicable where the defendant's primary motivation was to make money[.]"); *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1058 (N.D. Cal. 2025) (use of Meta tracking technology on defendant's video

game website insufficient); *Katz-Lacabe v. Oracle Am.*, 668 F. Supp. 3d 928, 935, 945 (N.D. Cal. 2023) (similar); *In re Google Gmail Litig*., 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014) (similar).

Plaintiff also has not pled CBSi intended to commit a further criminal or tortious act *after* the alleged interception, as required. The Ninth Circuit has held there is a "temporal thread" that runs through the statute which requires that "[t]he recording party must also have the independent criminal or tortious purpose at the time the recording was made." *Planned Parenthood Fed'n of Am. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022); *Sussman v. ABC*, 186 F.3d 1200, 1202-03 (9th Cir. 1999) ("Where the taping is legal, but is done for the purpose of facilitating some further impropriety, such as blackmail, section 2511 applies. Where the purpose is not illegal or tortious, but the means are, the victims must seek redress elsewhere."); *Smith*, 2025 WL 2210002, at *4 (acknowledging the "'temporal' component" of the crime-tort exception). Plaintiff here alleges no facts to satisfy this temporal requirement, and suggests he views the alleged interception alone as sufficient, even though the alleged crime or tort may not "inhere" in the interception. Compl. ¶ 21 (referring to "the *tortious* interception of his communications"); *Doe v. Kaiser Found. Health Plan*, 2024 WL 1589982, at *8-10 (N.D. Cal. Apr. 11, 2024) (crime-tort exception did not apply when the further crime or tort "inheres in the alleged interception"). Plaintiff therefore has not plausibly alleged facts needed for his ECPA claim, and it should be dismissed.

**3. The Allegedly Intercepted "Communications" Were Contentless**

Like CIPA § 631, the ECPA requires interception of "the contents of any wire, electronic, or oral communication[.]" 18 U.S.C. § 2510(4). Further, "[t]he definition of 'contents' under CIPA is the same as under the [ECPA]." *Ramos*, 2025 WL 2144837, at *3–4. Therefore, for the same reasons Plaintiff fails to allege the contents of any communications were intercepted for purposes of CIPA, he fails to allege any contents were intercepted under the ECPA. *See Zynga*, 750 F.3d at 1109 ("Because information disclosed in the referrer headers at issue here is not contents … plaintiffs cannot state a claim under [the ECPA]"). Plaintiff's ECPA claim should be dismissed for this reason as well.

**E. Plaintiff Fails to Plausibly Allege Facts Needed for a Claim Under the UCL**

The UCL requires demonstrating Plaintiff "lost money or property [] as a result of" the alleged conduct. *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 747 (N.D. Cal. 2023) (citation omitted). "[I]t is not enough to merely say the information was taken and . . . has lost value . . . [t]hat the information

has external value, but no economic value to plaintiff, cannot serve to establish that plaintiff has personally lost money or property [for UCL standing]." *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1040 (N.D. Cal. 2019). Instead, a plaintiff must "[']attempt[] or intend[] to participate' in the market for the information allegedly collected and stored by Defendants, 'or otherwise to derive economic value from' that information." *Lau v. Gen Digital Inc.*, 2023 WL 10553772, at *7 (N.D. Cal. 2023).

Plaintiff, however, provides only conclusory allegations that he "lost money or property" because his "[b]rowsing data . . . has recognized and quantifiable economic value in the digital advertising marketplace." Compl. ¶ 72. He at no point alleges he was prohibited from participating in a market for his information, and therefore lacks UCL standing. *Smith*, 2025 WL 2210002, at *3–4 (dismissing UCL claim with prejudice where plaintiff offered "generalized allegations...regarding the value of web browsing data[,]" explaining a plaintiff "must show 'loss of money or property' or a 'tangible increased cost or burden to the consumer[.]'"); *Katz-Lacabe*, 668 F. Supp. 3d at 943 (dismissing UCL claims because "the weight of authority in the district and the state [holds] that 'the 'mere misappropriation of personal information' does not establish compensable damages.'"); *Low v. LinkedIn Corp.*, 2011 WL 5509848, at *4–5 (N.D. Cal. 2011) (similar). Plaintiff's UCL claim should be dismissed accordingly.

### F. Plaintiff Fails to Plausibly Allege Facts Needed For an Unjust Enrichment Claim

While "California law on unjust enrichment remains somewhat unclear" (*Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1096 (N.D. Cal. 2022)), the California Supreme Court has treated claims for unjust enrichment as an equitable theory of restitution that applies when "[a]n individual . . . has been unjustly enriched at the expense of another[.]" *Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 988, 998 (2015). However, Plaintiff's allegations fall short because (1) Plaintiff alleges no unlawful conduct on the part of CBSi, and (2) even if Plaintiff had adequately alleged unlawful conduct, he has an adequate remedy at law, barring his unjust enrichment claim which seeks equitable relief.

As in *Khamooshi* and the *Tsering v. Meta Platforms, Inc.* case before this Court, Plaintiff does not plausibly allege CBSi was unjustly enriched or that it engaged in unlawful conduct. 786 F. Supp. 3d 1174 (N.D. Cal. 2025); 2026 WL 89320, at *7 (N.D. Cal. 2026) (Lin, J.). In *Khamooshi I*, the court found similar allegations of internet tracking by website defendants were not "unjust" and did not result in an injury to website visitors. 786 F. Supp. 3d at 1183 ("Just as a retailer might profit from the use of

home addresses without being unjustly enriched, Plaintiffs ha[ve] not shown why Defendant's use of their IP addresses was unjust"). Plaintiff also does not plausibly allege CBSi was unjustly enriched by "extract[ing] the commercial value" of his data because he does not—and cannot—allege he was barred from participating in a market for such information. Compl. ¶ 92; *Khamooshi II*, 2025 WL 2822879, at *4 (dismissing with prejudice where plaintiffs failed to plead defendant's actions "diminished their opportunity to get paid" for "studies offering to pay users to observe their behavior browsing the web."). Therefore, "[b]ecause [Plaintiff] 'ha[s] not stated a claim against [Defendant] for any unlawful conduct, [he has] also failed to state an unjust enrichment claim." *Tsering*, 2026 WL 89320, at *7.

Further, Plaintiff has failed to "first establish a lack of adequate remedy at law before securing equitable relief." *In re Apple Processor Litig.*, 2022 WL 2064975, at *11 (N.D. Cal. 2022). As the Ninth Circuit explained in *Sonner v. Premium Nutrition Corporation*, "courts of equity should not act . . . when the moving party has an adequate remedy at law." 971 F.3d 834, 844 (9th Cir. 2020). Here, Plaintiff cannot bring an unjust enrichment claim, as he is expressly seeking damages, including in connection with his common law intrusion upon seclusion claim, and alleges no facts to suggest he lacks an adequate remedy at law. Compl. ¶ 87. This Court has dismissed unjust enrichment claims with similarly deficient allegations. *In re Meta Android*, 2026 WL 1279416, at *10 ("Plaintiffs concede that their unjust enrichment claim should be dismissed because they do not allege they lack an adequate remedy at law."); *Gilligan*, 2026 WL 32259, at *4 (similar). It should do so here as well.[7]

### G. The Constitutional Invasion of Privacy And Intrusion Upon Seclusion Claims Fail

Plaintiff fails to state constitutional invasion of privacy and intrusion upon seclusion claims. A constitutional privacy claim requires "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy[;]" and (3) "a serious invasion of privacy." *Hill v. NCAA*, 7 Cal. 4th 1, 35–37 (1994). Intrusion upon seclusion similarly requires a highly offensive intrusion into a place, conversation, or matter as to which plaintiff had a reasonable expectation of privacy. *McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1033 (N.D. Cal. 2019). Where, as here, the constitutional and common law theories rest on the same alleged conduct, courts analyze them together. *Id*. Both claims fail here.

[7] *In re Facebook* does not establish otherwise, because the plaintiff claimed Facebook actually "sold user data to advertisers." 956 F.3d at 600. While the advertising-related technology on the Website allegedly generated revenue for CBSi, Plaintiff does not claim CBSi sold data directly to advertisers. Compl. ¶ 73.

*First*, Plaintiff lacks a legally protected privacy interest in the information at issue, as explained in the context of Article III standing. *Supra* § IV.A.1. This failure to plausibly allege a protected privacy interest also means he cannot state a constitutional or common law invasion of privacy claim. *In re Google, Inc. Priv. Pol'y Litig.*, 58 F. Supp. 3d 968, 973–74, 985–88 (N.D. Cal. 2014) (no invasion of privacy in case involving comingling of "user data" across Google accounts and disclosure to "third-parties for advertising purposes"); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (no invasion of privacy in case involving alleged disclosure of "unique device identifier number, personal data, and geolocation information"); *Morilha v. Alphabet Inc.*, 2024 WL 5205542, at *4 (N.D. Cal. Dec. 23, 2024) ("[D]isclosure of . . . geolocation data is not sufficiently 'egregious' to support an invasion of privacy claim."). Plaintiff's failure to plausibly allege that CBSi violated CIPA and the ECPA further demonstrates he has no legally protected interest under the California Constitution. *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *5 (N.D. Cal. Dec. 22, 2022) ("Because plaintiff did not plausibly plead wiretapping, plaintiff likewise did not plausibly plead a protected privacy interest under the California Constitution."). Plaintiff thus fails the first prong of the test set forth in *Hill*.[8]

*Second*, Plaintiff alleges no facts establishing a reasonable expectation of privacy. While this Court has held that "[w]hether a party has a reasonable expectation of privacy is a context-specific inquiry[,]" context establishes Plaintiff does not have a reasonable expectation of privacy, as none of the data here identified him with specificity. *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 945 (N.D. Cal. 2024); Compl. Figs. 1–4. This case is distinct from other privacy cases in which this Court has held otherwise, which have concerned third parties that purportedly compile user data to build detailed profiles. *Smith*, 2025 WL 1085169, at *3; *In re Meta Android*, 2026 WL 1279416, at *6. Plaintiff here, however, has at most pled disclosure of information showing a particular device accessed a webpage, which does not suffice. *Popa*, 153 F.4th at 791 (no "infringement of any such privacy interest" where the third-party software allegedly collected information reflecting plaintiff visited a public website); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 525 (C.D. Cal. 2021) (no reasonable expectation of privacy in website navigation data, including "mouse clicks," "keystrokes," and "payment card information");

[8] The data at issue in cases where this Court has found a protected privacy interest is distinct, and includes "name, address, and phone number." *Smith*, 754 F. Supp. 3d at 944; *Smith*, 2025 WL 1085169, at *3 (N.D. Cal. Apr. 4, 2025) (involving phone number, email, and home address or Facebook ID).

*Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140, at *4–5 (S.D. Cal. May 8, 2024) (similar).

*Third*, Plaintiff has not alleged facts establishing a serious invasion of privacy, as CBSi's alleged conduct at most constitutes "routine commercial behavior." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) ("[D]isclosure of personal information, including social security numbers, does not constitute an 'egregious breach of the social norms'"); *Google*, 58 F. Supp. 3d at 973-74 (disclosure of browsing histories was not highly offensive); *In re iPhone*, 844 F. Supp. 2d at 1050, 1063 (no invasion of privacy based on disclosure of addresses, geolocation, device identifier, gender, age, time zone, and app use). In *Fogelstrom v. Lamps Plus, Inc.*, a California appellate court found an alleged invasion of privacy amounted to "routine commercial behavior" where it consisted of "obtaining plaintiff's address without his knowledge or permission, and using it to mail him coupons and other advertisements." 195 Cal. App. 4th 986, 992 (2011), *as modified* (June 7, 2011). Here, Plaintiff has similarly only alleged collection and use of his information without his knowledge for advertising purposes. Compl. ¶ 9, 12. He has therefore not satisfied the third prong of *Hill* and cannot surmount the "high bar" California courts set for invasion of privacy under "both" the "California Constitution and the common law." *Belluomini v. Citigroup*, 2013 WL 3855589, at *6 (N.D. Cal. July 24, 2013).[9]

Even if Plaintiff sufficiently pled a constitutional invasion of privacy, the Court should dismiss the demand for money damages. Compl. Prayer for Relief; *Clausing v. S.F. Unified Sch. Dist.*, 221 Cal. App. 3d 1224, 1238 (1990). Courts within the Ninth Circuit agree that the California Constitution does not provide for a private right of action for money damages for invasion of privacy. *E.g., Blanco v. County of Kings*, 142 F. Supp. 3d 986, 1000 (E.D. Cal. 2015) ("[A]rticle I, section 1 does not permit a private right of action for money damages . . . for an alleged violation of the privacy provision[.]").

## V. CONCLUSION

For the foregoing reasons, CBSi respectfully requests that the Court dismiss the Complaint in its entirety. In the alternative, CBSi respectfully requests that the Court briefly stay proceedings until the Ninth Circuit mandate issues in the *Drummer* appeal.

[9] These allegations stand in contrast to the behavior that this Court has recognized as highly offensive. *E.g.*, *In re Meta Android*, 2026 WL 1279416, at *6 (involving claims that Meta "circumvented browsers' sandboxing protections in order to perfectly link users' browsing behavior with their Meta accounts.").

Dated: June 15, 2026

Respectfully submitted,

WEIL, GOTSHAL & MANGES LLP

By: */s/ David R. Singh*
DAVID R. SINGH

DAVID R. SINGH
david.singh@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway, 6th Floor
Redwood Shores, CA 94065-1134 Telephone:
(650) 802-3000
Facsimile: (650) 802-3100

DAVID L. YOHAI (*pro hac vice* pending)
david.yohai@weil.com
BLAKE J. STEINBERG (*pro hac vice* pending)
blake.steinberg@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Defendant CBS Interactive Inc.